UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| KATHY MITCHELL,<br><br>    Plaintiff,<br><br>v.<br><br>CAMBRIDGE FRANCHISE<br>HOLDINGS, LLC, et al.,<br><br>    Defendant. | Civil Action No. 3:19-CV-493-CHB<br><br>**MEMORANDUM OPINION AND ORDER** |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter is before the Court on a Motion to Compel Arbitration and Dismiss or, Alternatively, to Stay Action Pending Arbitration ("Motion to Compel Arbitration") filed by Defendants Cambridge Franchise Holdings, LLC and Nashville Quality, LLC (collectively "Defendants"). [R. 6] Plaintiff Kathy Mitchell ("Mitchell") filed a response. [R. 11] Defendants replied. [R. 14] This matter is now ripe for decision. For the reasons stated herein, Defendants' Motion to Compel Arbitration is **GRANTED**.

**I.  Background**

Plaintiff Kathy Mitchell originally filed this action in Jefferson Circuit Court alleging that Defendants violated Kentucky and federal law in their employment practices at the Burger King restaurant where she worked. [R. 1-2 pp. 1–2] Defendants own, operate, and franchise Burger King restaurants, including the one at which Plaintiff worked. [*Id.* pp. 2–3] After removing the present action, Defendants moved to dismiss this action or stay its resolution pending arbitration based on an arbitration agreement that the Defendants claim that Plaintiff electronically signed. [R. 6] The relevant section of the Arbitration Agreement ("Arbitration Agreement" or "Agreement") provides that:

1

> Any controversy, dispute or claim arising out of or relating to your employment with the Company, any employment agreement or contract between you and the Company, the conditions and terms of your employment with the Company, the termination of your employment with the Company, all events related thereto, this Agreement, and any other controversy, dispute or claim between you and the Company, its parent entities, subsidiaries and affiliates (and its and their current and former members, partners, officers, directors, employees and agents, whether acting in their individual capacity or their capacity on behalf of the Company or its parent entities, subsidiaries and affiliates), shall be settled by final and binding arbitration administered by the American Arbitration Association . . . in accordance with its Employment Arbitration Rules and Mediation Procedures . . . that are in effect at the time the mediation commences.

[R. 6-2 Ex. 3] Defendants claim that Plaintiff signed this Agreement electronically by accessing it through her on-line Human Resource Information System ("HRIS") account, where employees could log on to check pay statements and access other company documents and information. [R. 6-2 ¶ 16; R. 14 p. 3; R. 14-1 ¶ 5] Defendants provided a copy of the Agreement, digitally signed, that reads in bold at the bottom of each page, "Digitally signed by Kathy Mitchell on 6/25/2018 1:04PM." [R. 6-2 Ex. 3] Plaintiff responded that she never signed the Agreement in any form, nor had she ever "seen any document indicating that there was any arbitration agreement . . . ." [R. 11-1 pp. 2–3] Defendants claim that Plaintiff received multiple emails notifying her of the Agreement, that she could not have accessed anything in her HRIS account without first seeing and accepting the terms of the Agreement, and that the fact that she digitally signed other agreements in her HRIS account on the same day and in the same manner proves that she signed the Arbitration Agreement. [R. 14 pp. 4–6; R. 14-1 p. 2] Defendants further contend that an arbitration agreement need not even be signed to be valid, and Plaintiff consented to its terms by continuing her employment with Defendants after receiving notice of the Agreement. [R. 14 pp. 6–7]

II.   Analysis

The Federal Arbitration Act ("FAA") was enacted "to ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219

2

(1985). The statute "embodies [a] national policy favoring arbitration . . . ." *Richmond Health Facilities v. Nichols*, 811 F.3d 192, 195 (6th. Cir. 2016) (citing *Seawright v. Am. Gen. Fin. Servs., Inc.,* 507 F.3d 967, 972 (6th Cir. 2007)). The FAA applies to written agreements to arbitrate disputes that arise out of contracts involving transactions in interstate commerce.[1] Under its terms, such agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that a district court *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Byrd*, 470 U.S. at 218 (emphasis in original).

When a party invokes the FAA and asks a federal court to dismiss or stay a case and compel arbitration, the Court must determine whether the parties agreed to arbitrate the dispute at issue. *Stout v. J.D. Byrider,* 228 F.3d 709, 714 (6th Cir. 2000). This requires an examination of the contract language in light of the strong federal policy favoring arbitration, resolving any ambiguities in the contract or doubts as to the parties' intentions in favor of arbitration. *Id.* Courts should engage in the following four-step inquiry: (1) determine whether the parties agreed to arbitrate; (2) determine the scope of that agreement; (3) if federal statutory claims are asserted, the Court must consider whether Congress intended those claims to be non-arbitrable; and (4) if the Court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending

---

[1] The Federal Arbitration Act ("FAA") applies only to "[a] written provision in any maritime transaction or *a contract evidencing a transaction involving commerce.*" 9 U.S.C. § 2 (emphasis added). In *Allied Bruce–Terminix Companies, Inc. v. Dobson,* the United States Supreme Court had occasion to interpret the phrase "evidencing a transaction involving commerce." 513 U.S. 265 (1995). First, the Court concluded that the word "involving" was the "functional equivalent of 'affecting.'" *Id.* at 273–74. Next, the Court adopted a "transaction in fact" interpretation of the phrase "evidencing a transaction." *Id.* at 277–78. The Court "read[ ] the Act's language as insisting that the 'transaction' in fact 'involv[e]' interstate commerce, even if the parties did not contemplate an interstate commerce connection." *Id.* at 281.

arbitration. *Id.* Plaintiff does not dispute the latter three steps in the arbitration inquiry. Instead, she argues only that there was no agreement to arbitrate in the first place because she never signed the Agreement or otherwise consented to its terms.

Arbitration agreements are fundamentally contracts. As such, courts must "review the enforceability of an arbitration agreement according to the applicable state law of contract formation." *Seawright*, 507 F.3d at 972. In Kentucky, like in all jurisdictions, a contract requires both parties to agree to be bound by it for it to be enforceable. *See David Roth's Sons, Inc. v. Wright & Taylor, Inc.*, 343 S.W.2d 389, 391 (Ky. 1976). A digital signature demonstrates that intent. *See McCoy v. Cambridge Franchise Holdings, LLC*, No. 3:18-CV-00856-GNS, 2019 WL 4280597, at *2 (W.D. Ky. Sept. 10, 2019); *Wilson v. CPB Foods, LLC*, No. 3:18-CV-014-CHB, 2018 WL 6528463, at *3–4 (W.D. Ky. Dec. 12, 2018); *Seeds v. Sterling Jewelers, Inc.*, No. 3:17-CV-718-CHB, 2018 WL 5892368, at *4 (W.D. Ky. Nov. 9, 2018); *Rodriguez v. Cracker Barrel Old Country Store, Inc.*, No. 2:17-CV-20 (WOB-CJS), 2017 WL 6349173, at *4–5 (E.D. Ky. Dec. 12, 2017); *Braxton v. O'Charley's Restaurant Props., LLC*, 1 F. Supp. 3d 722, 726–28 (W.D. Ky. 2014); *Polly v. Affiliated Comput. Servs., Inc.*, No. 10-135-ART, 2011 WL 93715, at *2–3 (W.D. Ky. Jan. 11, 2011).

Under the FAA, the party seeking to compel arbitration must first make a prima facie showing of the existence of a valid agreement to arbitrate. *Arnold v. Owensboro Health Facilities, L.P.*, No. 4:15-cv-00104-JHM, 2016 WL 502061, at *3 (W.D. Ky. Feb. 8, 2016) (citing *MHC Kenworth-Knoxville/Nashville v. M & H Trucking, LLC*, 392 S.W.3d 903, 906 (Ky. 2013)). A party can make its prima facie showing by providing copies of a written, signed agreement to arbitrate. *Id.* Defendants have provided a copy of the Arbitration Agreement with Plaintiff's digital signature. [R. 6-2 Ex. 3] Moreover, in affidavits from Tammy Owens, the Vice

President of Human Resources for Cambridge Franchise Holdings, they have explained in detail the process by which the Agreement was signed. [R. 6-2; 14-1] On June 12, 2018, Tammy Owens sent an email to all employees informing them that she would be uploading the Arbitration Agreement to HRIS and that they had until June 22, 2018 to log in and electronically agree to its terms. [R. 6-2 p. 2; *Id.* Ex 1] The next day, the Agreement was uploaded to HRIS, triggering a second company-wide email notification sent to all employees at the email addresses provided by employees when they on-boarded. [R. 6-2 p. 3] Employees could access the Agreement through their online HRIS accounts, which were password protected by self-created unique personal identification numbers ("PIN"). [*Id.*] To sign the Agreement, employees had to log into their HRIS accounts and enter their unique PIN. [*Id.* p. 4] Defendants' records indicate that Plaintiff digitally signed the Agreement on June 25, 2018 at 1:04pm, and this digital signature appears at the bottom of each page of the Agreement. [*Id.*; *see also* R. 6-2 Ex. 3 PageID# 82–85] Defendants have clearly satisfied their prima facie burden. *See Arnold*, 2016 WL 502061, at *3 (finding that defendant had met the prima facie burden by providing a copy of the signed arbitration agreement).

To avoid arbitration, Plaintiff must demonstrate that the validity of the Agreement is "in issue" by showing there is a genuine issue of material fact as to the validity of the Agreement, a showing that mirrors the summary judgment standard. *Great Earth Cos. v. Simons,* 288 F.3d 878, 889 (6th Cir. 2002); *see also Freeman v. Easy Mobile Labs, Inc.*, No. 1:16-CV-00018-GNS, 2016 WL 4479545, at *1 (W.D. Ky. Aug. 24, 2016) (citing *Arnold v. Rent-a-Center, Inc.*, No. 11-18-JBC, 2011 WL 1810145, at *2 (E.D. Ky. May 12, 2011) ("This court will treat the motion to compel arbitration as one for summary judgment . . . .")). To do this, Plaintiff must present

sufficient evidence that, when viewed in the light most favorable to her, would permit "a reasonable finder of fact [to] conclude that no valid agreement to arbitrate exists." *Id.*

Plaintiff submitted a sworn declaration in which she claims that she did not sign the Agreement and was not presented the Agreement in any form—in person, online, by email, or by physical mail. [R. 11 p. 2; R. 11-1] Whether a plaintiff's sworn declaration denying that he or she signed an arbitration agreement can be, on its own, sufficient to create a genuine issue of material fact as to the validity of that agreement is unclear, particularly in light of the FAA's national policy favoring arbitration. *Compare Braxton v. O'Charley's Restaurant Props., LLC*, 1 F. Supp. 3d 722, 727 (W.D. Ky. 2014) (citing *Mazera v. Varsity Ford Management Servs., LLC*, 565 F.3d 997, 1001 (6th Cir. 2009)) (noting that in *Mazera*, the Sixth Circuit, in dicta, quoted the Third Circuit's position that in most cases an unequivocal denial accompanied by supporting affidavits is sufficient to create a genuine issue of material fact, but that a party's "naked assertion" is insufficient), *with Aldrich v. University of Phoenix, Inc.*, No. 3:15-cv-578-JHM, 2016 WL 915287, at *10 (W.D. Ky. March 4, 2016) (holding that "[p]laintiffs must present some form of evidence other than their 'own statements'" to create a genuine issue of material fact regarding the formation of an arbitration agreement), *and McCoy v. Cambridge Franchise Holdings, LLC*, No. 3:18-cv-856-GNS, 2019 WL 4280597, at *3 (W.D. Ky. Sept. 10, 2019) (holding that an agreement that was digitally signed through the plaintiff's online employment account was sufficient evidence that the plaintiff had agreed to arbitrate despite plaintiff's sworn declaration denying signing any such agreement).

However, a plaintiff cannot avoid arbitration by simply "denying facts upon which the right to arbitration rests[,]" but must have sufficient evidence to raise a factual issue regarding the validity of the agreement. *Aldrich*, 2016 WL 915287, at *9–10 (citing *Tinder v. Pinkerton*

6

*Security*, 305 F.3d 728, 735 (7th Cir. 2002); *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 41, 55 (3d. Cir. 1980)). A plaintiff does this by identifying specific evidence in the record that demonstrates a genuine material factual dispute. *Aldrich*, 2016 WL 915287, at *9.

Plaintiff submitted her own declaration denying that she signed the Agreement, but the declaration is entirely unsubstantiated and, in places, contradicted by evidence in the record.[2] To prove the existence of the Agreement, Defendants have submitted Plaintiff's digitally signed Arbitration Agreement [R. 6-2 Ex. 3]; the Owens Affidavits [R. 6-2 Ex. A; R. 14-1]; the email Owens sent to all staff notifying them of the Agreement and instructions on how to sign it [R. 6-2 Ex. 1]; the email sent to staff when they on-boarded instructing them on how to create their HRIS accounts [R. 6-2 Ex. 2]; and additional policies that Plaintiff digitally signed on the day she purportedly signed the Arbitration Agreement [R. 14-1 Ex. A]. This evidence shows that Plaintiff was informed by email on June 12, 2018 (at the email address she provided to Defendants) that the Agreement would be uploaded to her HRIS account and told that she was required to review and sign it by June 22, 2018. [R. 6-2 ¶ 9; *Id.* Ex. 1] She received a second email notification the next day when the Agreement was uploaded. [R. 6-2 ¶ 12] Further, a printed copy of the Agreement was posted on the notice board at the Burger King where she worked. [*Id.* ¶ 14] Additionally, starting on June 13, 2018, if any employee signed into his or her HRIS account, they received a pop-up window that notified them that documents requiring their signature had been uploaded. [*Id.* ¶ 17]

While Plaintiff claims that she never signed or saw the Agreement, [R. 11 p. 7], she presents no evidence other than a blanket denial in the form of her own statement. [R. 11-1] She does nothing to discredit the digitally signed Agreement provided by Defendants (much less

---

[2] For example, Plaintiff claims her employment with Defendants ended in June of 2018 [R. 11-1 ¶ 3] despite the fact that her timecard statement clearly shows she continued working until July 9, 2018. [R. 14-1 Ex. B p. 7]

explain how her electronic signature could have been placed on the Agreement using her confidential PIN). Nor does she provide any explanation for why her digital signature appears on the Agreement such as someone else signing onto her account, or claim that the signature is a forgery in any way. She also does not deny having an HRIS account, deny signing into her HRIS account after the Agreement had been uploaded, or claim that anyone else knew her unique PIN (required to sign into her account). Moreover, the same day that Plaintiff's time stamped digital signature appears on the Agreement, she digitally signed several additional policies through her HRIS account. [R. 14-1 ¶ 3; *Id.* Ex. A] These additional policies could only be signed by logging into Plaintiff's HRIS account using her own unique PIN number. [R. 14-1 ¶ 4–5] Plaintiff's HRIS account was configured in a way that made it impossible to view and sign these other policies without first signing the Arbitration Agreement, meaning that she must have signed the Agreement to sign these additional policies. [R. 14-1 ¶ 4–5]

In a case like this, where Defendants have provided such significant evidence of the validity of the Agreement, Plaintiff must offer more than her own unsubstantiated denial to create a genuine triable issue of fact. *Aldrich*, 2016 WL 915287, at *10 (citing *Tinder*, 305 F.3d at 735; *Par-Knit Mills,* 636 F.2d at 55). Plaintiff has failed to offer any other evidence, or to discredit any of the evidence put forth by Defendants. Consequently, she has not produced enough evidence, even when viewed in the light most favorable to her, to raise a genuine issue of fact as to the validity of the Agreement. *See id.*

Even if Plaintiff did not sign the Agreement, the matter is still arbitrable. Under Kentucky law, a party can be bound to an unsigned arbitration agreement if his or her actions indicate acceptance of the contract. *Braxton v. O'Charley's Restaurant Props., LLC*, 1 F. Supp. 3d 722, 727 (W.D. Ky. 2014) (citing *Sweeney v. Theobald*, 128 S.W.3d 498, 501 (Ky. App.

2004)); *see also Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 978 (6th Cir. 2007) (holding that arbitration agreements need not be signed). This is in line with the text of the FAA, which requires that arbitration agreements be in writing, but does not necessarily require they be signed. 9 U.S.C. § 2. An employee's continued employment can demonstrate acceptance of an arbitration agreement. *Aldrich v. University of Phoenix, Inc.*, 661 F. App'x. 384, 390 (6th Cir. 2016).

In this case, the Agreement was a condition of continued employment and all employees were required to log into their HRIS accounts and sign the Agreement. [R. 6-2 Ex. 1; R. 14-1 ¶ 7] Tammy Owens's first email informing employees of the Agreement stated that, "[p]lease remember that every employee is required to log into their Efficenter [HRIS] profile and review, acknowledge and/or agree to the documents outlined above. Completion time for this is Friday June 22nd." [R. 6-2 Ex. 1] Plaintiff also received a notification by email when the Agreement was uploaded [R. 6-2 ¶ 12], and the Agreement was posted at her workplace on the employee notices board [*Id.* ¶ 14]. After receiving these notifications in June, Plaintiff continued to work at Burger King through July 9, 2018, indicating that she consented to the Agreement's terms. *See Aldrich*, 661 F. App'x at 390; *Braxton*, 1 F. Supp. 3d at 727; [R. 14-1 Ex. B p. 4]

Plaintiff denies that she has ever seen "any document indicating that there was any arbitration agreement connected—in any way—to [Plaintiff's] employment with Defendants," and thus she could not have consented to its terms. [R. 11-1 ¶ 9] This, like her denial that she signed the Agreement, is insufficient to create a genuine issue of material fact. *See Aldrich*, 2016 WL 915287, at *10 (citing *Tinder*, 305 F.3d at 735; *Par-Knit Mills,* 636 F.2d at 55). Moreover, the fact that she digitally signed Defendants' other policies only further substantiates that she had notice. Given that the configuration of her HRIS account made reviewing (and signing) the

Arbitration Agreement a necessary predicate to viewing many of these additional policies [R. 14-1 ¶¶ 2–5], the signed policies indicate that, at the very least, Plaintiff had notice of the Agreement—even if she did not sign it outright.  Even assuming that Plaintiff did not have notice of the Agreement until June 25, 2018—the day she signed the various company policies—she nonetheless continued her employment and accepted paychecks into July, thus consenting to its terms.  *See*, *e.g.*, *McCoy v. Cambridge Franchise Holdings, LLC*, No. 3:18-CV-00856-GNS, 2019 WL 4280597, at *3 n.1 (W.D. Ky. Sept. 10, 2019).

Finally, the last issue remaining is whether to stay the action or dismiss it entirely.  Section 3 of the FAA suggests that staying the case and retaining jurisdiction until the arbitration is concluded is appropriate, but the Sixth Circuit has frequently held that a case may be dismissed rather than stayed when all claims in the case are referred to arbitration.  *See*, *e.g.*, *Ozmoor v. T–Mobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009).  Since all of Mitchell's claims fall squarely within the Agreement to arbitrate, the Court will dismiss the case without prejudice.  Based on the above, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** as follows:

1. Defendants' Motion to Compel Arbitration and Dismiss or, Alternatively, to Stay Action Pending Arbitration **[R. 6]** is **GRANTED**.

2. The case is **DISMISSED WITHOUT PREJUDICE** subject to the parties' right to move to re-open this case for entry of an arbitration award or for any other relief to which the parties may be entitled.

3. Plaintiff Mitchell **SHALL** prosecute her claims in accordance with the Parties' Arbitration Agreement.

4. This case shall be **STRICKEN** from the Court's active docket.

This the 15th day of January, 2020.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY